[D.I. 101]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

PANIAGUA GROUP, INC.,

               Plaintiff,

      v.

HOSPITALITY SPECIALISTS, LLC,
et al.,

               Defendants.

Civil No. 11-6003 (AMD)

**ORDER**

      This matter comes before the Court by way of motion filed by Plaintiff Paniagua Group, Inc. (hereinafter, "Plaintiff"), seeking entry of default judgment against Defendants Florence Cirignano and Michael Cater.[1] (Second Motion for Default Judgment

---

[1] Plaintiff and Defendants Greg Cirignano, Building Service and Hospitality Solutions, LLC, Building Services Solutions, LLC, and Hospitality Specialists, LLC have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). (See Consent to Jurisdiction [D.I. 22].) Although the defaulting parties – Defendants Florence Cirignano and Michael Cater – have not explicitly consented to this Court's jurisdiction, the Court finds that as Defendants Florence Cirignano and Michael Cater "did not appear and establish [their] standing as [] part[ies] in this action, the Magistrate Judge has jurisdiction to enter the requested default judgment." See, e.g., Kukiela v. LMA Prof'l Recovery Grp., No. 10-688, 2011 U.S. Dist. LEXIS 85417, at *1 n.1 (D. Ariz. Aug. 1, 2011) (citing United States v. Real Property, 135 F.3d 1312, 1314 (9th Cir. 1998)).

(hereinafter, "Pl.'s Mot.") [D.I. 101].) The Court has considered the submission, notes that no opposition has been filed, and that the time within which to file opposition has expired. The Court decides this matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, Plaintiff's motion [D.I. 101] is granted in part and denied without prejudice in part.

Because Defendants Florence Cirignano and Michael Cater have not responded in the present matter, all facts are taken from Plaintiff's amended complaint [D.I. 52], the affidavits submitted in support of this motion [D.I. 101-2, 101-5, and 101-6], the joint final pretrial order [D.I. 67], and the joint trial exhibits.[2]

The present litigation is a breach of contract action in which Plaintiff asserts breach of contract, promissory estoppel, and *quantum meruit* claims against Defendants Hospitality Specialists, LLC, Building Service and Hospitality Solutions, LLC, Building Services Solutions, LLC, Greg Cirignano, Florence Cirignano, and Michael Cater.[3] (See generally Amended Complaint [D.I. 52].) Specifically, Plaintiff alleges that "[i]n early 2007"

---

[2] The joint trial exhibits were submitted to the Court on November 4, 2014. (See Exhibit to D.I. 101 Motion for Default Judgment [D.I. 102]), but have not been filed on the docket. Plaintiff is directed to file those pretrial exhibits cited in this Order on the docket.
[3] Plaintiff filed the initial complaint in this action on October 13, 2011 against Defendants Hospitality Specialists, LLC, Building Service and Hospitality Solutions, LLC, Building Services Solutions, LLC, and Greg Cirignano. (See Complaint [D.I. 1].) Plaintiff filed the amended complaint on September 5, 2013. (See Amended Complaint [D.I. 52].)

Plaintiff entered into "an oral subcontract with 'Building Service Hospitality Specialist,'" [4] (hereinafter, "BSHS") under which Plaintiff agreed to "furnish[] labor and materials in connection with creation, construction, alteration, repair or improvement to two different properties[,] a Marriott Hotel in Albany, New York (hereinafter, "the Albany Project") and a Sheridan Hotel in Philadelphia, Pennsylvania (hereinafter, "the Philadelphia Project"). (<u>Id.</u> at ¶¶ 15, 16.) Plaintiff contends that the pricing under this subcontract was based on a "per unit price[.]" (<u>Id.</u> at ¶ 17.) Plaintiff further alleges that its obligations regarding the Albany Project were completed on or about April 20, 2007 and that Plaintiff was not paid the final price for the completed work – $115,500.00. (<u>Id.</u> at ¶ 18.) Plaintiff also alleges that its obligations regarding the Philadelphia Project were completed on or about October 11, 2007 and the final price of the completed work was $815,193.75. (<u>Id.</u> at ¶ 19.) Plaintiff alleges that it was paid $500,937.90 of the amount owed for the Philadelphia Project leaving $314,255.85 unpaid. (<u>Id.</u> at ¶ 20.) In the complaint, Plaintiff seeks to recover the amount owed under the Philadelphia Project contract ($314,255.85), the amount owed under the Albany Project contract ($115,500.00), interest, court costs, and "such other relief as is just and proper under the circumstances." (<u>Id.</u>

---

[4] Building Service Hospitality Specialist is not a party to the present action.

at ¶¶ 21-50.) In the present motion, however, Plaintiff seeks $255,415.05 because, according to Plaintiff, of the amount owed to Plaintiff $174,340.80 was paid to Plaintiff's agent, Bart Corporation, and Plaintiff "is responsible for the actions of its agent." (Brief [D.I. 101-1], 6-7.)

On November 1, 2013, default was entered against both Defendants Florence Cirignano and Michael Cater for failing to respond to the amended complaint.[5] (Clerk's Entry of Default, Nov. 1, 2013.) Prior to the commencement of any trial, Plaintiff and Defendants Greg Cirignano, Hospitality Specialists, LLC, Building Service and Hospitality Solutions, LLC, and Building Services Solutions, LLC entered into a settlement agreement and set forth the material terms of the agreement on the record.[6] (See generally

---

[5] On August 22, 2014 Plaintiff filed a motion for default judgment against Defendants Florence Cirignano and Michael Cater. (Motion for Default Judgment [D.I. 79].) On November 19, 2014, the Court dismissed without prejudice Plaintiff's motion for default judgment as to Defendant Florence Cirignano "pursuant to the settlement agreement between the parties" and as to Defendant Michael Cater "with the right to refile the motion." (Order [D.I. 86], Nov. 19, 2014, 2.) On December 1, 2014, Plaintiff filed a motion for default judgment against Defendant Michael Cater. (Second Motion for Entry of Default Judgment [D.I. 88].) On April 10, 2015, the Court denied without prejudice Plaintiff's motion for default judgment against Defendant Michael Cater "in light of the fact that Plaintiff's default judgment request was discounted pursuant to a settlement agreement and the settlement agreement appear[ed] to have been abandoned[.]" (Order [D.I. 93], Apr. 10, 2015, 2.)

[6] The parties agreed to the following terms: Defendant Greg Cirignano would "pay $170,000 to Paniagua Group within seven years" in full satisfaction of any claim asserted by Plaintiff against Defendants Greg Cirignano, Florence Cirignano, Hospitality

Transcript [D.I. 96], Nov. 19, 2014, 3:23-25; 4:1-5.) On November 19, 2014, counsel and the participating parties appeared before the Court for a non-jury trial. Defendants Florence Cirignano and Michael Cater neither appeared before the Court on November 19, 2014, nor otherwise participated in the litigation.

Thereafter, counsel for Plaintiff reduced the settlement to a written agreement. (See Affidavit of John N. Walker, Esq. (hereinafter, "Walker Affidavit") [D.I. 101-2], ¶ 14; see also Exhibit B to Walker Affidavit [D.I. 101-4] (setting forth the written settlement agreement).) The written settlement agreement provided for the same release of all claims by and between Plaintiff and Defendants Greg Cirignano, Florence Cirignano,[7] Hospitality Specialists, LLC, Building Service and Hospitality Solutions, LLC, and Building Services Solutions, LLC, as was set forth on the record on November 19, 2014. (Id. at 1.) In addition, the written settlement agreement provided that Defendants Greg Cirignano and Florence Cirignano shall pay to Plaintiff

---

Specialists, LLC, Building Service and Hospitality Solutions, LLC, and Building Services Solutions, LLC in the litigation. (Transcript [D.I. 96], Nov. 19, 2014, 4:1-25 to 6:1-24; 13:1-8.) In addition, Defendant Greg Cirignano agreed "to testify with respect to any other Defendants or potential future Defendants[]" (id. at 12:13-24), and the parties agreed that the Court would "retain jurisdiction for enforcement of the settlement." (Id. at 7:1-5.)

[7] Although the settlement agreement initially included Defendant Florence Cirignano, Defendant Florence Cirignano did not appear on November 19, 2014 and did not sign the settlement agreement.

$170,000.00 over a seven (7) year period in full satisfaction of all claims. (Id. at 1-2.)

Counsel for Plaintiff represents that on January 16, 2015, he was advised by counsel for Defendant Greg Cirignano that Defendant Greg Cirignano "was unwilling to sign the [s]ettlement [a]greement if his wife [Defendant Florence Cirignano] was also required to sign it." (Walker Affidavit [D.I. 101-2], ¶ 15.) On April 1, 2015, the Court granted Plaintiff's unopposed motion to reopen the proceedings in light of the fact that the parties had not consummated the settlement agreement within the required sixty (60) day period. (Order [D.I. 92], Apr. 1, 2015.) On May 1, 2015, Plaintiff filed a motion seeking a court order (1) enforcing the settlement agreement with respect to Defendants Greg Cirignano, Hospitality Specialists, LLC, Building Service and Hospitality Solutions, LLC, and Building Services Solutions, LLC, and (2) entering default judgment against Defendants Florence Cirignano and Michael Cater in the amount of $225,415.05. (First Motion for Enforcement of Settlement Agreement and Entry of Default Judgment [D.I. 97].) The Court granted Plaintiff's motion to enforce the settlement agreement in part, finding "the release and settlement amount terms are enforceable" (Order [D.I. 98], Sept. 4, 2015, 10), and "enforc[ing] the payment terms as they are set forth in the written copy of the settlement agreement with the exception of

the first settlement payment due date."[8] (Id. at 12.) The Court did not "enforce any remaining terms of the written copy of the settlement agreement."[9] (Id. at 13.)

The Court also denied without prejudice Plaintiff's motion to the extent it requested default judgment be entered against Defendants Florence Cirignano and Michael Cater because Plaintiff did "not provide any specific and/or sufficiently detailed information or case law to support Plaintiff's claim as to the liability of" those Defendants. (Id. at 18.) Specifically, in response to Plaintiff's assertions that "Defendants Florence Cirignano and Michael Cater are 'joint venturers' in the unincorporated Building Service Hospitality Specialist, and that Florence Cirignano and Michael Cater utilized [BSHS's] checking account for their own personal benefit" (id. at 17-18), the Court found that Plaintiff did not address the "legal basis upon which

---

[8] The Court "require[d] that the settlement payments commence on December 1, 2015" and "that the final payment under the settlement agreement be made no later than March 1, 2022." (Order [D.I. 98], Sept. 4, 2015, 12-13.)

[9] The Court noted that "[t]he written copy of the settlement agreement contain[ed] an acceleration provision, a fee-shifting provision, a provision providing that Defendant Greg Cirignano 'represent and warrant' that he is 'financially capable' of making the settlement payments, and an assignment of any claims provision" (see Order [D.I. 98], Sept. 4, 2015, 13 (citing Affidavit of John N. Walker, Esq. Ex. B [D.I. 97-4], 2-3)), and that "Plaintiff's proposed form of order include[d] an automatic default provision providing for an automatic entry of default judgment in the event Defendant Greg Cirignano fail[ed] to timely make a settlement payment to Plaintiff." (Id. (citing Proposed Order [D.I. 97-8], 3 on the docket).)

the Court may hold [Defendants Florence Cirignano and Michael Cater] responsible for acts of the unincorporated entity[,]" BSHS. (Id. at 17.) The Court reasoned "it is unclear whether Plaintiff is attempting to pierce the corporate veil of the corporate defendants or asks the Court to find Defendants Florence Cirignano and Michael Cater liable under an alter ego theory of liability." (Id.) Thereafter, on October 14, 2015, the Court ordered that any motions for default judgment be filed no later than November 6, 2015 (Text Order [D.I. 100], Oct. 14, 2015), and Plaintiff timely filed this motion. (See Pl.'s Mot. [D.I. 101].)

　　　　In the present motion, Plaintiff argues that it is entitled to entry of default judgment against Defendants Florence Cirignano and Michael Cater because they failed to plead or otherwise respond to the amended complaint and they are jointly and severally liable to Plaintiff for the debts owed to Plaintiff by the unincorporated entity Building Service Hospitality Specialist. (See generally Brief [D.I. 101-1].) Plaintiff presents two theories of vicarious liability in support of its motion. Plaintiff argues that "Building Service Hospitality Specialist is an unincorporated association, making its members individually liable for its debts" (see Brief [D.I. 101-1], 8), and that Defendants "Florence Cirignano and Michael Cater are coventurers who are jointly and severally liable to Paniagua for BSHS's debts." (Id. at 11.) For the reasons set forth, the Court finds that

Plaintiff is entitled to an entry of default judgment as to liability.

"In order to impose personal liability upon a defendant or obligate him or her in favor of a plaintiff, a court must be vested with jurisdiction over the parties as well as subject matter jurisdiction." Ayers v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000. Plaintiff is an Illinois corporation with its principal place of business in Grove Village, Illinois (Amended Complaint [D.I. 52], ¶ 1), Defendants "are all domiciled in New Jersey," (id. at ¶ 13), and Plaintiff seeks $429,755.85 from Defendants. (Id.) This Court has personal jurisdiction over Defendants Florence Cirignano and Michael Cater because Defendants are domiciled in New Jersey. (Id. at ¶ 12.)

Plaintiff applies New Jersey substantive law in support of its motion for default judgment. (See generally Brief [D.I. 101].) Plaintiff has not addressed choice of law and whether New Jersey law applies in this matter. Federal courts sitting in diversity apply the forum state's choice of law rules to determine the substantive state law to apply. See Klaxon Co. v. Stentor Elec. Mfg., 313 U.S. 487, 496-98; see also Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006) (noting "[a]s this was a diversity case

filed in New Jersey, New Jersey choice of law rules govern"). As set forth in Spence-Parker v. Del. River & Bay Auth.:

> New Jersey's choice-of-law rules for contract claims call for a two-step analysis. The Court first assesses whether there is an 'actual conflict' between the laws of the potentially interested states on the issue in question; if there is no divergence between the potentially applicable laws, the Court is 'presented with a false conflict,' Curtis T. Bedwell [&] Sons, v. Geppert Bros., 655 A.2d 483 (N.J. Super. Ct. App. Div. 1995), and the choice-of-law 'inquiry is over.' Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006).
>
> If there is an actual conflict between the two states' laws, the Court determines 'which state has the most meaningful connections with and interests in the transaction and the parties.' NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 319 (3d Cir. 1995). Although a host of factors may figure into this governmental interests analysis, id., '[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state' will apply. RESTATEMENT (SECOND) OF CONFLICTS § 188(3).

616 F. Supp. 2d 509, 523 (D.N.J. 2009). Here, there are four potentially interested states: New Jersey - the forum and the domicile of the defaulting Defendants; Illinois – the principal place of business of Plaintiff; New York – the location of the Albany Project; and Pennsylvania – the location of the Philadelphia Project. Applying these principles, the Court concludes first that there is no conflict between the laws of New Jersey and the other

interested states based on a coventurer theory of liability.[10] Consequently, as "there is no divergence between the potentially applicable laws, the Court is 'presented with a false conflict,'

---

[10] In New Jersey, "a joint venture has been defined as '[a] special combination of two or more persons where in some specific venture a profit is jointly sought without any partnership or corporate designation.'" Wittner v. Metzger, 178 A.2d 671, 674 (N.J. Super. Ct. App. Div.) (citations omitted), certif. denied, 181 A.2d 446 (1962). It "'is an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits and losses.'" Id. (citations omitted). A joint venture requires a contract between the joint venturers that may either be "express or implied." Id. at 674; see also Kozlowski v. Kozlowski, 395 A.2d 913, 917 (N.J. Super. Ct. Ch. Div. 1978) (stating "joint venture may be implied from the conduct of the parties"). The existence of a contract to form a joint venture is dependent upon the parties' intentions. Id. at 675; see also Borough of W. Caldwell v. Borough of Caldwell, 138 A.2d 402, 410 (N.J. 1958) (setting forth the general rules of contract interpretation). In New York, "[i]t is well settled that '[a] joint venture . . . is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership[.]" Eskenazi v. Schapiro, 812 N.Y.S.2d 474, 477 (N.Y. App. Div. 2006). In Illinois, a joint venture is defined as "an association of two or more persons to carry out a single enterprise for profit" and "[t]he existence of a joint venture is inferred from applicable facts and circumstances with the intent of the parties being the most significant element." O'Connell v. Pharmaco, 517 N.E.2d 688, 691 (Ill. App. Ct. 1987). "Joint ventures are not distinct legal entities, and as such, the co-venturers are personally liable for the debts associated with the joint venture[.]" Peabody-Waterside Dev., LLC v. Islands of Waterside, LLC, 995 N.E.2d 1021, 1024 (Ill. App. Ct. 2013). In Pennsylvania "[a] joint venture is an 'association of persons or corporations who by contract, express, or implied, agree to engage in a common enterprise for their mutual profit.'" Corp. Aviation Concepts, Inc. v. Multi-Service Aviation Corp., No. 03-3020, 2005 WL 562767, at *4 (E.D. Pa. Mar. 8, 2015) (quoting Duquesne Light Co. v. Woodland Hills Sch. Dist., 700 A.2d 1038, 1055 (Pa. Commw. Ct. 1997)). Furthermore, "'a joint venturer will be held responsible with his or her associates for the losses sustained by the enterprise.'" Id. (quoting Snellbaker v. Herrmann, 462 A.2d 713, 716 (Pa. Super. Ct. 1983)).

<u>Curtis T. Bedwell & Sons v. Geppert Bros.</u>, 655 A.2d 483 (N.J. Super. Ct. App. Div. 1995), and the choice-of-law 'inquiry is over.' <u>Lebegern v. Forman</u>, 471 F.3d 424, 428 (3d Cir. 2006)." <u>Spence-Parker</u>, 656 F. Supp. 2d at 497.

An entry of default judgment is a two-step process which is governed by Federal Rule of Civil Procedure 55. <u>See</u> <u>generally</u> FED. R. CIV. P. 55(a)-(b); <u>see</u> <u>also</u> <u>Mancuso v. Tyler Dane, LLC</u>, No. 08-5311, 2012 WL 1536210, *2 (D.N.J. May 1, 2012) (noting "[o]btaining default judgment against a defendant is a two-step process"). First, under Rule 55(a), the moving party must seek, and obtain, an entry of default from the Clerk of Court "after the properly served defendant has failed to plead or otherwise defend himself." <u>Mancuso</u>, 2012 WL 1536210 at *2 (citing FED. R. CIV. P. 55(a)). Thereafter, the movant may seek an entry of default judgment from the court against the defaulting party. <u>Sheetmetal</u> <u>Workers Local Union No. 22 v. Savvy Sheet Metal</u>, No. 09-331, 2011 WL 832163, at *2 (D.N.J. Mar. 2, 2011) (citing <u>La. Counseling &</u> <u>Family Servs., Inc. v. Makrygialos, LLC</u>, 543 F. Supp. 2d 359, 364 (D.N.J. 2008)); <u>see</u> <u>also</u> FED. R. CIV. P. 55(b)(2).

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." <u>Hritz v. Woma Corp.</u>, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted). In assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis,

under which "the Court must determine (1) whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]" Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co., No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted). "Plaintiffs are not entitled to an entry of default judgment as of right" as "[a] defendant's failure to appear or answer does not vitiate" the Court's "responsibility to examine the complaint" and, in its discretion, "grant or deny entry of default judgment." Omniwind Energy Sys., Inc. v. Redo, No. 14-5976, 2015 WL 790101, at *10 (E.D. Pa. Feb. 24, 2015). "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

As the Court has previously found that "the docket reflects that both Defendants Florence Cirignano and Michael Cater were served with the amended complaint on September 14, 2013," (Order [D.I. 98], Sept. 4, 2015, 16-17), and that the docket further reflects that Defendants Florence Cirignano and Michael Cater have failed to respond to the amended complaint for over two

13

(2) years,[11] (Order [D.I. 98], Sept. 4, 2015, 17), the Court need only address whether a sufficient cause of action was stated and whether default judgment is proper. The Court turns first to whether a sufficient cause of action was stated.

In the complaint, Plaintiff asserts claims for breach of contract for both the Albany and Philadelphia Projects. (Amended Complaint [D.I. 52] ¶¶ 21-27, 37-41].)[12] To state a claim for breach of contract in New Jersey, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim

---

[11] The Court notes that Plaintiff's counsel certifies that Defendant Michael Cater did personally appear and participate in a settlement conference for the present matter on July 11, 2014. (Walker Affidavit [D.I. 101-2], ¶ 8.) Defendant Michael Cater, however, was not a party to the settlement agreement between Plaintiff and Defendants Greg Cirignano, Building Service and Hospitality Solutions, LLC, Building Services Solutions, LLC, and Hospitality Specialists, LLC. (See Order [D.I. 98], Sept. 4, 2015.)
[12] Plaintiff has also asserted claims for promissory estoppel and *quantum meruit* for Defendants' conduct related to both the Philadelphia and Albany Projects. (See Amended Complaint [D.I. 52], ¶¶ 28-36, 42-50.) Because the Court finds that Plaintiff has alleged sufficient facts to set forth a cause of action for breach of contract for both the Philadelphia and the Albany Projects, the Court will not address Plaintiff's claims for promissory estoppel and *quantum meruit*. Plaintiff's brief in support of the present motion does not specifically address the breach of contract, promissory estoppel, or *quantum meruit* claims, rather Plaintiff argues generally that Defendants Florence Cirignano and Michael Cater "are individually liable for amounts due and owing to [Plaintiff] for its work in connection [with the Philadelphia and Albany] projects and, as such, default judgment should be entered, jointly and severally, against the Defaulting Defendants." (Brief [D.I. 101-1], 1.)

performed its own contractual obligations." <u>Frederico v. Home</u> <u>Depot</u>, 507 F.3d 188, 203 (3d Cir. 2007) (citations omitted).

Here, Plaintiff has alleged that there was a contractual relationship between BSHS and Plaintiff based on "an oral subcontract" made in 2007 for Plaintiff to "furnish[] labor and materials in connection with" the Albany and Philadelphia Projects (Amended Complaint [D.I. 52], ¶¶ 15-16; <u>see</u> <u>also</u> Paniagua Affidavit [D.I. 101-5], ¶ 3); that Plaintiff fully performed its obligations under the subcontract; that the work was accepted by Defendants; that Defendants breached the agreement by failing to pay Plaintiff all money owed (Amended Complaint [D.I. 52] ¶¶ 26-27; 38-40; <u>see</u> <u>also</u> Paniagua Affidavit [D.I. 101-5], ¶¶ 5-7); and that Plaintiff is currently owed $255,415.05 by Defendants. (<u>See</u> Paniagua Affidavit [D.I. 101-5], ¶ 9.) Therefore, Plaintiff has sufficiently alleged a cause of action for breach of contract against BSHS.

BSHS, however, is sued only in the capacity as a "doing business as" entity and is not a separately named defendant in the present matter. (<u>See</u> <u>generally</u> Amended Complaint [D.I. 52].) Rather, Plaintiff asserts that it "brought suit against its individual members – the Defaulting Defendants and Greg Cirignano – because BSHS not consist of seven or more persons and thus does

not meet the requirements to be sued in its own name under N.J.S.A. 2A:64-1, et. seq."[13] (Brief [D.I. 101-1], 11.)

"A voluntary unincorporated association is an aggregate of persons under a common name for the pursuit of a common enterprise." Harker v. McKissock, 96 A.2d 660, 662 (N.J. 1953); see also Bango v. Ward, 97 A.2d 147, 149 (N.J. 1953) (reasoning that an unincorporated service club "is not a legal entity separate and distinct from the persons who comprise its membership. It derives its existence 'from the consensual agreement of the component members, who act not by a distinct entity[,] but by virtue of a mere agency'" (quoting Harker, 96 A.2d at 662)). Furthermore, in Bango, the New Jersey Supreme Court noted that an action filed against an unincorporated service "club by name was in reality an action against the collective membership[.]" Bango, 97 A.2d at 150. In New Jersey, N.J.S.A. 2A:64-1 to -6 governs

---

[12] N.J.S.A. 2A:64-1 provides that:

> [a]ny unincorporated organization or association, consisting of 7 or more persons and having a recognized name, may sue or be sued in any court of this state by such name in any civil action affecting its common property, rights and liabilities, with the same force and effect as regards such common property, rights and liabilities as if the action were prosecuted by or against all the members thereof. Such an action shall not abate by reason of the death, resignation, removal or legal incapacity of any officer of the organization or association or by reason of any change in its membership.

actions involving unincorporated associations. See Davidson v. Roselle Park Soccer Federation, 700 A.2d 900, 901 (N.J. Super. Ct. Ch. Div. 1996); see also Harker, 96 A.2d at 663 (noting "[i]n New Jersey we have a statute providing that an unincorporated association consisting of seven or more persons may sue or be sued in its common name in any action or suit affecting its common property, rights and liabilities, as effectually as if the action or suit were prosecuted by or against all the members thereof[]").

Here, Plaintiff alleges that BSHS is an unincorporated entity. (See Amended Complaint [D.I. 52], ¶ 10(a). Where an unincorporated association "is not amenable to suit[,] the members of the association are individually liable for the debts of the association." Davidson, 700 A.2d at 902 (citations omitted) (finding that an unincorporated association could not be sued because it was not "organized for a pecuniary purpose[,]" but an action could be maintained against the organization's members)[14]; see also Soveral v. Franklin Trust, No. 90-2052, 1991 WL 160339, at *2 (D.N.J. Aug. 12, 1991) (dismissing an unincorporated

---

[14] N.J.S.A. 2A:64-6, provides that "[t]his chapter, in so far as it relates to actions of an equitable nature against unincorporated organizations or associations, shall not apply to a fraternal, charitable or other organization not organized for pecuniary profit." N.J.S.A. 2A:64-6; see also Harker, 96 A.2d at 663 (observing that "as concerns suits of an equitable nature, [N.J.S.A. 2A:64-1 -6] has no application to 'a fraternal, charitable, or other organization not organized for pecuniary profit'").

association from an action because it had "fewer than seven members" and was therefore "not amenable to suit in [New Jersey]"). Furthermore, Plaintiff's counsel avers that "[t]he records that I reviewed showed that Building Service Hospitality Specialist ("BSHS") was operated by Defendants Greg Cirignano, Florence Cirignano, and Michael Cater. Based on my records search at the New Jersey Secretary of State, I determined that BSHS was not incorporated. When I deposed Mr. Cirignano, he was unable to demonstrate that BSHS was properly incorporated or otherwise registered as a limited liability corporation, though various other entities shown in the caption of this case were incorporated". (Walker Affidavit [D.I. 101-2], ¶ 3.) Defendant Greg Cirignano testified that he was "almost 98 percent sure it was an LLC" (Cirignano Dep., Pretrial Exhibit 3, at 10:6) and that Defendant Hospitality Specialists, LLC was "a successor entity to Building Service Hospitality Specialist" (Id. at 13:20 to 14:5.) Plaintiff also alleges Business Service Hospitality Specialist was owned and operated by Defendants Greg Cirignano, Florence Cirignano, and Michael Cater. (See Amended Complaint [D.I. 52], ¶ 10 (alleging "there is such unity of interest and ownership that the separate personalities of 'Hospitality Specialists LLC,' 'Building Service and Hospitality Solutions, LLC,' 'Building Services Solutions, LLC' and 'Building Service Hospitality Specialist' no longer exist separately from Greg Cirignano,

Florence Cirignano, and Michael Cater[]"). Specifically, Plaintiff alleges Defendant Greg Cirignano "did business and held himself out, to the public and to [Plaintiff], as an unincorporated entity known as [BSHS]" as well as opened a bank account "which was used for all the business transactions between BSHS, its customers, and its trade creditors." (Amended Complaint [D.I. 52], ¶ 5.)

Plaintiff alleges Defendant Florence Cirignano "had an ownership stake" in BSHS and "loaned or capitalized" the entity. (Id. at ¶ 6.) Defendant Greg Cirignano testified that he "took . . . a second mortgage on [his] home to finance projects that [he] was doing" and that Florence Cirignano was "the mortgagee." (Cirignano Dep., Pretrial Exhibit 3, 103:6-10.) He testified further that he used the "second mortgage as . . . a credit line to run [his] company." (Id. at 112:11-15; see also Pretrial Exhibit 24 (setting forth copies checks from Florence Cirignano made out to BSHS).) Defendant Greg Cirignano also testified that his "home was in [Florence Cirignano's] name and certain credit cards to run [his] business were in her name." (Cirignano Dep., Pretrial Exhibit 3, 106:11-12.) In response to a question regarding "the scope of Florence Cirignano's responsibilities[,]" Defendant Greg Cirignano testified that "[s]he was just my wife and supporting me any way she can as far as my business is concerned," but that she did not "have any specific task at the company." (Id. at 20:6-13.) Plaintiff alleges Defendant Michael Cater "operated" BSHS.

(Amended Complaint [D.I. 52], ¶ 7.) Defendant Greg Cirignano testified that Defendant Michael Cater was the "controller for [his] company" (Cirignano Dep., Pretrial Exhibit 3, 10:22-23) and that Defendant Cater "supervise[d] contracts; operations outside," (id. at 20:16-17), and that had "responsibility for the day-to-day workings . . . [and] the money flows." (Id. at 21:5-9.)

Plaintiff also alleges that the individual Defendants Greg Cirignano, Florence Cirignano, and Michael Cater received checks from BSHS and used checks "drawn upon" the BSHS bank account but "titled in [their] own names to pay third parties for [] personal expenses." (Amended Complaint [D.I. 52] at ¶¶ 5-7.) Defendant Greg Cirignano testified that BSHS issued a number of checks directly to him "[f]or personal income and also business and expenses." (Cirignano Dep., Pretrial Exhibit 3, 97:23-24; see also Pretrial Exhibit 20 (setting forth photocopies of checks from the BSHS account made out to Greg Cirignano).) Defendant Greg Cirignano also testified that a number of checks were issued from the BSHS account by him and that "[n]ot all" of the checks were for business expenses. (Cirignano Dep., Pretrial Exhibit 3, 100:9-14; see also Pretrial Exhibit 21 (setting forth photocopies of checks issued from the BSHS bank account by Greg Cirignano).) Defendant Greg Cirignano testified that Building Service Hospitality Specialist issued checks directly to Defendant Florence Cirignano. (Cirignano Dep., Pretrial Exhibit 3, 102:13-

22; see also Pretrial Exhibit 22 (setting forth photocopies of checks issued from the BSHS bank account made out to Florence Cirignano).) Defendant Greg Cirignano did not know what all of the checks made out to Defendant Florence Cirignano were for. (Cirignano Dep., Pretrial Exhibit 3, 104:8-14.) Defendant Greg Cirignano also testified that Defendant Florence Cirignano issued checks from the BSHS account. (Cirignano Dep., Pretrial Exhibit 3, 105:17-22; see also Pretrial Exhibit 23 (setting forth copies of checks issued from the BSHS bank account by Florence Cirignano).) Defendant Greg Cirignano testified that BSHS issued checks directly to Michael Cater. (Cirignano Dep., Pretrial Exhibit 3; see also Pretrial Exhibit 25 (setting forth copies of checks issued from the BSHS account to Defendant Michael Cater).) Defendant Greg Cirignano also testified that Defendant Michael Cater issued checks from the BSHS bank account. (Cirignano Dep., Pretrial Exhibit 3, 116:12-16; see also Pretrial Exhibit 26 (setting forth photocopies of checks issued from the BSHS account by Michael Cater).) The facts alleged in the complaint establish that Defendants Greg Cirignano, Florence Cirignano and Michael Cater, based on their involvement with BSHS, were members of the unincorporated entity BSHS and therefore are liable for the debts of the unincorporated entity. The declarations and exhibits submitted in support of Plaintiff's motion corroborate the factual allegations.

Plaintiff alternatively asserts "Florence Cirignano and Michael Cater are coventurers who are jointly and severally liable to Paniagua for BSHS's Debts." (Brief [D.I. 101-1], 11.) As previously set forth, in New Jersey "a joint venture has been defined as '[a] special combination of two or more persons where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.'" <u>Wittner</u>, 178 A.2d at 674 (citations omitted). A joint venture requires "some or all of the following elements":

> (A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;
>
> (B) A joint property interest in the subject matter of the venture;
>
> (C) A right of mutual control or management of the enterprise;
>
> (D) Expectation of profit, or the presence of 'adventure,' as it is sometimes called;
>
> (E) A right to participate in the profits;
>
> (F) Most usually, limitation of the objective to a single undertaking or Ad hoc enterprise.

<u>Wittner</u>, 178 A.2d at 675 (quoting Williston, Contracts 3d ed. 1959), § 318A, at pp. 563-565). "The elements required to establish a joint venture are essentially the same as that for a partnership." <u>Carney v. Hansell</u>, 831 A.2d 128, 134 (N.J. Super. Ct. Ch. Div. 2003). Moreover, "the rules of law which apply to partners apply also to joint ventures." <u>Kozlowski</u>, 395 A.2d at 917

(citing 68th St. Apts., Inc. v. Lauricella, 362 A.2d 78, 85 n.2 (N.J. Super. Ct. Law Div. 1976), aff'd 374 A.2d 1222 (N.J. Super. Ct. App. Div. 1977)). N.J.S.A. 42:1A-18(a) provides that with certain exceptions "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." N.J.S.A. 42:1A-18(a); see also Whitfield v. Bonanno Real Estate Grp., 17 A.3d 855, 860 (N.J. Super. Ct. App. Div. 2011) (observing that "generally speaking, partners are jointly and severally liable for all obligations of the partnership"). Consequently, as Plaintiff maintains, all coventurers would be similarly liable for the debts or obligations of the joint venture.

The Court finds that, based on those facts alleged in the complaint and described infra, the pleading supports the alleged operation of, capitalization of, and receipt of funds from BSHS by Defendants from which the Court can find that an implied contractual agreement existed to operate BSHS between Defendants Greg Cirignano, Florence Cirignano, and Michael Cater, which consequently imposes liability upon those individual defendants. See, e.g., Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc., 49 F. Supp. 2d 728, 736 (D.N.J. 1999) (finding the plaintiff had pled "a sufficient number" of the elements of a joint venture where the plaintiff had pled that one party to the joint venture provided management, the other party to the joint venture

provided capital, both parties shared in profits, and only one party shared in the venture's losses). Likewise, the declaration and exhibits submitted in support of Plaintiff's motion corroborate the factual allegations. Consequently, as coventurers Defendants, Greg Cirignano, Florence Cirignano, and Michael Cater, like partners, are liable for the debts of the joint venture.[15] Therefore, the Court finds that the pleading establishes liability for Defendants Florence Cirignano and Michael Cater based on either a theory of members of an unincorporated association or as coventurers in a joint venture – BSHS.

Prior to "imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1)

---

[15] Plaintiff argues alternatively that "[e]ven if the enterprise formed by the individual Defendants is a corporation, which it clearly is not, liability should still be viewed through the prism of a partnership or coventure." (Brief [D.I. 101-1], 13 n.1.) Specifically, Plaintiff asserts that "Courts have consistently held that, where 'corporate technisms are . . . overcome, the relationship of the principals can be seen as that of partners or coventurers.'" (Id. at 13 n.1 (citations omitted).) Plaintiff does not allege that Business Service Hospitality Specialist is a corporation. (See generally Amended Complaint [D.I. 52].) To the contrary, Plaintiff's counsel avers that "[b]ased on my records search at the New Jersey Secretary of State, I determined that [Building Service Hospitality Specialist] was not incorporated" and that at his deposition, Defendant Greg Cirignano "was unable to demonstrate that [Building Service Hospitality Specialist] was properly incorporated or otherwise registered as a limited liability corporation, though various other entities shown in the caption of this case were incorporated." (Walker Affidavit [D.I. 101-2], ¶ 3.) Accordingly, the Court will not engage in a hypothetical analysis of the individual Defendants' liability as if Building Service Hospitality Specialist were a corporation.

whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987). "In weighing these factors, courts must remain mindful that default is a sanction of last resort and resolve all doubt in favor of proceeding on the merits." Sheetmetal Workers Local Union No. 22, 2011 WL 832163, at *4.

Here, because Defendants Florence Cirignano and Michael Cater have not filed any responsive pleadings nor shown cause why a default judgment should not be granted, the Court need not determine if there is a meritorious defense or whether the default was the result of willful misconduct. See Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dimedio Lime Co., No. 06-4519, 2007 WL 4276559, at *3 (D.N.J. Nov. 30, 2007) (reasoning that "where the Defendant has not filed any responsive pleadings or otherwise shown cause why default judgment should not be granted in Plaintiffs' favor, the Court is 'not in a position to judge whether the Defendant has a meritorious defense or whether any delay was the result of culpable misconduct'" (quoting Carpenters Health & Welfare Fund v. Naglak Design, No. 94-2829, 1995 WL 20848, at *2 (E.D. Pa. 1995)).) The Court need only consider whether Plaintiff will be prejudiced if default is denied.

The Court also finds that Plaintiff has been prejudiced by the failure of Defendants Florence Cirignano and Michael Cater to answer and will further be prejudiced if default is not granted. Specifically, Plaintiff has been prevented from prosecuting its case against all Defendants and has no other remedy against Defendants Florence Cirignano and Michael Cater. Furthermore, although Plaintiff has entered into a settlement agreement with some Defendants in this action, the settlement agreement does not satisfy all of the damages owed to Plaintiff. Plaintiff will be prejudiced if it is unable to recover the damages it is owed as the result of Defendants' breach of the agreement between the parties. Consequently, the Court shall grant Plaintiff's motion for default judgment [D.I. 101] as to liability for Defendants Florence Cirignano and Michael Cater. The Court turns next to the issue of damages.

As previously set forth, the Court need not accept as true Plaintiff's allegations relating to damages. See DIRECTV, Inc., 431 F.3d at 165 n.6. The Court "has considerable latitude in determining the amount of damages" Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer Inc., No. 08-2782, 2009 WL 3584358, at *3, (D.N.J. Oct. 27, 2009) (citing Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993)), and Federal Rule of Civil Procedure 55(b) provides that "the court may conduct hearings . . . to determine the amount of damages." FED.

R. Civ. P. 55(b)(2)(B). The Court need not conduct a hearing so "'long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.'" Trucking Emps., 2009 WL 3584358, at *3 (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). For example, in Christa Constr., LLC v. Connelly Drywall, LLC, the court granted the plaintiff's motion for default judgment without a damages hearing after considering the invoices the plaintiff "submitted to demonstrate the damages caused by the alleged breach [of contract], as well as for attorneys' fees." 879 F. Supp. 2d 389, 392 (W.D.N.Y. 2012). The Christa court awarded damages reasoning that it had "examined in detail the pertinent documentary evidence in support of the[] claims, and ha[d] no reason to question the authenticity and accuracy of [the plaintiff's] records showing a final cost . . . which exceed[ed] the original subcontract[.]" Id. Likewise, in Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc., the district court adopted the report and recommendation of the magistrate judge, who concluded that the plaintiff who submitted a declaration with a "detailed list of [] services with accompanying dates, prices and invoice numbers[;]" "copies of all of the actual invoices defendant failed to pay[;]" and "a signed and itemized Bill of Costs, together with copies of cancelled checks, seeking reimbursement" for filing and service fees had "provided the court with sufficient documentary proof

27

regarding the damages it sustained." 193 F.R.D. 87, 89 (E.D.N.Y. 2000). "In the absence of sufficient evidentiary support, the Court may order or permit the plaintiff to provide additional evidence to support his or her allegations." Mancuso, 2012 WL 1536210, at *2-3 (granting the plaintiffs' motion for default judgment in part as to liability, but "reserve[ing] decision on damages because [the] [p]laintiffs lack sufficient evidentiary support to justify their damages" and requiring the plaintiff to provide a "submission of quantifiable, specific damages").

In support of its motion Plaintiff has submitted the Affidavit of Alfred Paniagua, Plaintiff's President, who asserts that Defendants owe Plaintiff $255,415.05 as the result of the work Plaintiff completed for the Albany and Philadelphia Projects. (Paniagua Affidavit [D.I. 101-5], ¶ 9.) Plaintiff also cites to one pretrial exhibit – Pretrial Exhibit 38 to support its claim for damages. (See Brief [D.I. 101-1], 7.) The pretrial exhibit cited appears to set forth withdrawals from the BSHS account that were paid to Plaintiff and Plaintiff's agent Bart Corporation. (Pretrial Exhibit 38, at WF 226, WF 524, WF 213, WF 208, WF 192, WF 181, and WF 183.) Plaintiff has not cited to any invoices or other documentary evidence to support its damages claim with respect to the amount it is owed by Defendants. The Court finds this evidence insufficient to justify Plaintiff's motion as to damages. See Mapssy Int'l, Inc. v. Hudson Valley Trading Inc., No.

08-3037, 2012 WL 4889229, at *6 (D.N.J. Oct. 11, 2012) (concluding that the plaintiff had asserted a specific damage amount based on a breach of contract but had "not submitted documentation to support" the damages claim and that the court would enter a damages judgment "[u]pon receipt of memoranda and proof of [the] [d]efendant's outstanding debts"). Consequently, the Court denies without prejudice the motion for default judgment on the issue of damages and directs Plaintiff to provide a written submission justifying the damages sought and to append to its submission the documentary evidence relied upon to prove damages. After reviewing the submission, the Court will determine whether an evidentiary hearing is required.

Consequently, it is on this 28th day of April 2016,

**ORDERED** that Plaintiff's motion for default judgment [D.I. 101] shall be, and is hereby **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**; and it is further

**ORDERED** that Plaintiff's motion for default judgment against Defendants Florence Cirignano and Michael Cater is **GRANTED** with respect to liability and **DENIED** without prejudice as to the amount of damages; and if is further

**ORDERED** that Plaintiff shall provide the Court with additional information supporting the claim for damages consistent with this Order **by no later May 27, 2016;** and it is further

29

**ORDERED** that Plaintiff shall serve a copy of this Order on Defendants Florence Cirignano and Michael Cater within ten (10) days and shall file proof of such service on the docket.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE